Atkinson, when you're ready. Thank you. May it please the court, I'm John Mark Atkinson. I represent James Randy Schoonover and have reserved seven minutes of rebuttal. The right of a non-threatening, non-flight risk, non-resisting elderly amputee charged or detained for minor non-violent offenses to be free from the excessive force of being handcuffed from his wrist directly to his ankle is clearly established under federal law. And that right is clearly established under federal law because police officers are required and must take known injuries or objectively obvious injuries into consideration when handcuffing cooperative individuals who meet that same criteria. Not violent, not fighting back, not threatening. Therefore, the defendant officers in this case are not entitled to qualified immunity. And I'm asking this court to reverse the lower court's order dismissing plaintiff's excessive force claim against those individuals and remand the case to district court. Let me ask you something. It's a question of whether we're arguing in the right ballpark. The complaint, as I understand it, does not indicate that your client resisted, fought back. The implication is that basically when he said he was under arrest, he submitted and they handcuffed him. And because his lower left arm was amputated, they used his leg instead of the left arm to maintain him in security. In Graham v. Conner, there's a footnote that describes the whole doctrine of excessive force. And it limits that doctrine to bringing that person into custody. When a person resists or runs or flees, Garner was a person shot in the back. These are all excessive force in bringing somebody into custody. And they limit it exclusively. And they have said that when you get them into custody, you're actually under the due process clause, not the Fourth Amendment. And the excessive force standard is not the Graham v. Conner. I think the question might appropriately be raised is since the district court analyzed the whole thing under Graham v. Conner, maybe we should send it back and have it be analyzed under the due process clause, which I think may have a different approach to whether this was appropriate or not. Because we have the question of, well, there was some argument about how do you handcuff somebody who has only one hand? And the question is whether you needed to handcuff him. But that's a totally different question. Police presumably, when they take somebody to the station, usually cuff them. They don't want them opening the door. They don't want them hurting the police officers or whatever. And that whole analysis we don't have before us. And wouldn't it be better for the district court to look at this under the due process clause? That's my fundamental question. It may not get there the way you want it to, but you're asking for a remand, and maybe that's the right approach. Yeah, we certainly would be open to exploring that and evaluating this case under that standard, under the due process clause. But I think in addition to that, based on our brief and what we'll argue today, that this case should be remanded on a Fourth Amendment analysis as well. That's my point. Is there any Fourth Amendment problem? In other words, the Fourth Amendment is the seizure and resistance to seizure and the police conduct in bringing somebody into custody. They billy club them. They kick them. They hold them back with their foot in the middle of the back trying to get them cuffed. They stun gun them or they shoot them. These cases are all over, but they're all the Graham-Connor kind of cases. And the Supreme Court expressly said, we do not address the portion after he's in custody, and we do not apply this. Unless they say we leave that for another day as to how you apply it. And since then, of course, everybody knows it's a due process clause is the appropriate after he's in. And here he apparently submitted without resistance. At least that's what appears on the complaint. There's no evidence that he fled or is running or they beat him or tackled him or whatever. And in view of that, it seems to me we would be helped much better, wouldn't we, to have the analysis not conducted under Graham, but have it conducted under, for instance, we have the Robles case. That's the closest I could come to. And in the Robles case, police officers handcuffed somebody to a pole, a light pole. They were transferring him from one county to another. They attached him to a light pole. He was there for about 10 minutes until the other county picked him up. And that was analyzed under the due process clause as an inappropriate use of cuffing. And I think that's your argument. This was an inappropriate method of cuffing him. And one question, Your Honor, I admit I'm unsure of what the answer would be, is at what point does the taking him into custody begin and end? Well, that's a good question. It's absolutely a good question because at Blurred and the conduct during cuffing, I would think, can violate the Fourth Amendment. In other words, they can break somebody's wrist so they can bend his arms back when they're cuffing him. But in this case, there's no evidence of that. This case is basically how do they maintain the security over him by, was the cuffing method an appropriate method? And it was, you make a good argument that it was demeaning. But I think there were two questions that we would need to ask. Number one is analyze it under the due process clause. And two, whether an officer should have known about that analysis. But we don't have all that case law here. We did a little bit of our own research, and the only case we could find was the Robles case where we did address the cuffing method. And that might be some guidance for you. Yes. R-O-B-L-E-S. Thank you. And our view may be that it should be evaluated under both, at least initially, when he's first cuffed. I mean, at what point does that end and it becomes a due process question? I couldn't understand your argument in terms of what your position is because your complaint seemed to me, you're saying that he shouldn't have been arrested at all. Because you said that they came on private property and said, ask questions and those things like that, and never said anything at all. Went into the house and said he called the magistrate, and they said, okay, you're under arrest because you called a magistrate. That's what you said. So the district court judge focused on, well, I think it was kind of excessive under the circumstances because the normal way to take anyone in transport is to cuff them, as Judge Niemeyer said. That's correct. But you don't have a question about that he shouldn't have been cuffed at all by any means. Is that your complaint, or am I wrong? No, we agree and have pled and have argued that under these circumstances he could have just been, if they insisted on taking him into custody, which they could have just written him a. I think you missed my question. My question is, do you have an argument that he should not have been placed in cuffs at all, period? For example, the way your complaint reads, like a police officer sees me on the street and says, hey, how are you doing? What's your name? I say, well, my name is Roger. Well, you know, I'm going to arrest you because, I don't know, I saw you walking out of the magistrate's office. I'm going to arrest you. I wouldn't be concerned so much that how he cuffed me. I'd be concerned that the fact that he cuffed me as gently as he possibly could have. I mean, maybe, I'm just saying, your complaint read like that. We didn't file a specific false arrest cause of action. We did plead and pointed out the fact that he was told. Are you okay with being cuffed? Your only argument is that he cuffed him the wrong way? Well, I don't think he should have necessarily been cuffed at all, given his situation, his age. Now that's a whole different proposition, it seems to me. If you say, let's assume he had two good hands. He was missing his left hand, but let's assume he had two good hands. It would seem to me that the normal police procedure that's followed in probably 95% of the time, you never take somebody in a car uncuffed. He could get out the door. He could choke the officer. He could hit somebody. It's just a normal procedure. You're taking him to the police station if you have a proper arrest. Now, the Judge Gregory raised, you alleged something suggesting there was an improper arrest, but that's not alleged. And I thought the complaint was alleging that the cuffing was an inappropriate method of cuffing. That's what I thought your point was, and you were trying to address it under the Fourth Amendment, and I'm suggesting that would be probably a due process clause. There was no resistance in bringing him into custody. You're under arrest, and I'm going to cuff you. And the officer just picked the wrong way to cuff. That would be your argument, I gather. Yes, and there's two points to that. I guess we need to know you're not raising false arrest, even though you alleged, suggested it. Now, I think the record shows he did have a warrant out or something else. He was subject to arrest. Yeah, he was told, I'm arresting you because you called the magistrate, but he was later charged with not having proper registration and license, and that's undisputed that he didn't have that information. That's why a false arrest charge wasn't brought in, or cause of action wasn't pled in the complaint. Are you saying that police officers had that information before they took him away? Well, there was also the receiving of stolen property based on the tags, correct? Yes, ma'am. Yeah, so what the officers, what turned out in this case from his testimony, it's not in front of the court on the response, is that he. . . This is a motion to dismiss? Yes, sir. Why do we have all this record and this evidence? Well, because the court received all the briefs and didn't file an order or issue an order, a memorandum of opinion, for 10 months, so we continue to discover the case. Oh, I see. And there were certain aspects of the criminal. . . But the court didn't turn it into a Rule 56 motion, did it? That's correct. The defendants did. . . It's not a motion to dismiss. Right, but the defendants did attach exhibits to their response. . . Did you object to those attachments? We did not. Why not? Well, because all they show is what the. . . We actually think that isn't. . . They showed a whole lot. I read them. They got in a lot of evidence. Well, and the other thing is they're court records. So the courts have taken judicial notice of what that is to. . . Oh, you're saying a motion to dismiss can be augmented by just judicial notice about facts normally? No. No, it can't. I think we've held it can. Well. . . On a 12B-6, you can incorporate documents that are referred to in the complaint and documents that are, of which we can take judicial notice. I think we've held that. Yeah, but you did refer to those in your complaint. I did not. They were exhibits to the defendant's answer. And they've. . . I'm sorry. Exhibits to the defendant's response to the motion or to their motion to dismiss. What is it before us now? It's just immunity? Yes, qualified immunity, only whether it was clearly established. That's the only issue before us? Yes, sir. Well, what. . . officer's actions based on was there clear notice of that? And we've cited to accountants. . . Well, not accountants, but a number of cases and other cases referred to where officers were aware of someone's physical limitations, failed to accommodate those, and the courts have held that was a clear notice that they committed excessive force against that individual. And the case should have gone forward. Not excessive force. It's just improper cuffing. Well. . . According to your allegation. . . I'm not sure it is because we don't have much evidence on it. But there was no resistance. There was no pushing back. Basically, they were taking him into custody. Yes, but by placing him like this given his condition and putting him in a car like that. . . One arm to the one leg. Right. And transporting him to a vehicle like that. And there's cases that have held that that can by itself be excessive force. Well, they cuffed him to get into the vehicle. And apparently they didn't know how to cuff him any other way. That's the way they came up with. The judge talked about the possibility of cuffing him to a belt hook or something like this. But it seems to me the argument here is how's the proper way to maintain somebody in custody? How to cuff him? It's not that there was force used. He wasn't kicked. He wasn't beaten. He was cuffed in a strange way. And that's because, of course, he didn't have his left hand. But district court found it was excessive. That's correct. Absolutely. So you won the battle, but you lost the war of clearly established. That's correct. On this record, district court said it was excessive. Did any reasonable officer know that was excessive force? And we're arguing today that it's clearly established and that . . . They analyzed it under Graham v. Conner. And the Supreme Court has twice, I think, said that that is not the right analysis. Well, there are lots of cases that have held that cuffing alone can be excessive force that we've referred to. Okay. That's the best of my time. Okay. Thank you. Thank you, Mr. Atkinson. Mr. Atkins? Thank you, Your Honor. May it please the court. I'm Dranon Atkins. I represent Jonathan Holcomb and Michael Morris, both of whom were the deputy sheriffs involved in this case. As the court was asking, the only issue that's truly before the court is whether it was clearly established as of September 27, 2019, that this particular method of handcuffing violated the Fourth Amendment because that is how the case was pled. And down below, the district court held that the right at issue in this case has not been clearly established, at least in this circuit, and that, therefore, the deputies were entitled to qualified immunity. Judge Gregory, to your point, Plains did win the war. The court found that, as alleged in the complaint, it was excessive. It was unreasonable. But that's not the end of the qualified immunity analysis, and that's where we won. We ended up winning the war. He won the battle. And qualified immunity is designed to ensure that government officials are only held responsible when their conduct violates clearly established laws, and those laws must be established prior to the time of the challenged conduct. And here, there's nothing, unfortunately, in the Supreme Court jurisprudence or this court's jurisprudence that frames this issue of improper method of handcuffing such that these officers knew that this would violate Mr. Schoonover's rights. So the framing on the qualified immunity issue is really important, and we think that the district court properly framed and properly rejected plaintiff's framing of this as just a general right to be free from excessive force. And the court said that that, the district court said that that was way too general, that under Fourth Amendment jurisdiction, especially in qualified immunity context, you have to define it at an appropriate level of particularity. That's what the district court did. It held that when defined at the appropriate level, that the law is not clearly established. You also have a pretty uphill battle to show that every reasonable officer would have known. Every reasonable officer would have known. That's correct. That's correct. So, based on the way that this case was pled and the way that it was framed in the district court, and the framing by being what is the right at issue, that's really what we're here on is did the district court properly apply the qualified immunity analysis in this case? And we submit that it did in finding that there is no clearly established law. There is nothing in this court's jurisprudence concerning handcuffing except for Brown and Dulgas. The Brown case was from 2002 in which this court held that handcuffing would rarely constitute excessive force when an arrest is justified. Here we have a justified arrest. That's why I question you. We have this justified arrest, the way it was framed, and counsel has conceded that. He's not objecting to the fact that he was arrested at all. All that's across the board. So, if you could be arrested, you have to be transported. You have to be transported. You have to be cuffed. All right, that's established. Tell me this then. How is it that you, that the district court found that as pleaded, and you qualified, that it was excessive? What part as pleaded made it excessive? I think the part that... By the finding of the court. Go ahead. I think that, so when the court ultimately reached the conclusion on the reasonableness of the application of handcuffs, that was directly after it looked at the alternatives that plaintiff had suggested that could have been used in handcuffing. Belt loop, daisy chaining multiple cuffs together, and the court considered those to be reasonable alternatives, and that as compared to what is alleged in the complaint, because there are no allegations of any of these reasonable alternatives or whether the officers considered them or anything. Would they know that in the complaint? Would plaintiff know that? It's, we take the complaint as we get it. So, plaintiff's argument is based upon something that they think could have happened and did happen, and quite frankly, it's based on something that evidence that's not before the court would show that was impossible to happen. For instance, the argument that belt loops could have been used, well, this wasn't before the district court, but there's a subsequent video of Mr. Schoonover where he's wearing sweatpants or cut-off shorts or something. There's nothing like that that could happen. But the complaint alleges some animals, doesn't it? Well, under the Fourth Amendment, their motivation... Right. ...doesn't matter. So, you'll concede all the animals? For purposes of this argument, yes. We would concede that that is alleged. And for purposes of a motion to dismiss, we have to take facts as pled and accept facts as pled. We don't have to accept legal conclusions. But for purposes of our motion to dismiss, I think we even put that in our introductory motion, is we accept the facts as pled, although we dispute what they are. So, how do you ever get to any metric of any finding? Because you said they did it this way, but there are two other ways that would have been better, maybe by the belt or by the daisy chain and all those things. What would require at all from a stand-alone precedent for them to pick one over the other? And that was the purpose of our argument on qualified immunity. What are they to do? We're supposed to have guidance from courts, especially for law enforcement officers. They're supposed to have guidance as to what conduct is or is not permissible. And when you have novel situations, which I think everyone would agree that this is a very novel situation, what are they to do? And if they make a mistake in what they do and a court later says, well, you shouldn't have done that, that's the purpose of qualified immunity. In a case like this, once you get past it, you can see, as the plaintiff has, that the arrest was appropriate and authorized and transporting him, it's almost like you have to have some standard of compassionate arrest, sort of, because of his circumstances physically and his age, there was a need to compassionately say, well, we're not going to treat you like we normally treat other people because of your age and the circumstances and transport you in a different manner. I don't know how else you would deal with it other than with compassion. I don't know of anything that compels an alternative form of transportation. And, Your Honor, I don't know how to answer that. I think in practice that's probably what should happen. I know it's alleged that there was no compassion shown to Mr. Schoonover. However, again, stuff that's not before this court, because it wasn't before the district court, was there was compassion shown to him. Of course, if this is remanded for summary judgment or additional briefing, I believe that all would probably come in at that point. You mean it's just about the aspirin, let him take the aspirin and that kind of thing? No, it's about the... Well, don't go into it with you, like you said. I don't want to... No, no, keep your powder dry. We don't have to do that. All right, go ahead. Go ahead. So going back to Brown and Dulgas, so Brown's a 2002 case. If they're arrested, they're allowed to be placed in cuffs. Dulgas is, of course, this court's case on handcuffing an elementary school student. A 10-year-old girl. A 10-year-old girl. The case will. I'm sure the court does. And Dulgas is kind of enlightening to me because what the court, what this court did in Dulgas is exactly what Judge Copenhaver did below. It was look at what was alleged, look at what happened, determine that the officer's conduct was unreasonable and still grant qualified immunity because the law wasn't clearly established. And we submit that this is the same thing that should happen in this case. And, again, I'll just harp or touch on a point that my friend has made about what right is an issue. Again, the Fourth Circuit has never recognized this right that Mr. Schoonover wishes the court to adopt. That has been basically adopted in the Sixth Circuit, kind of in the Eighth Circuit and the Tenth Circuit, although each of those circuits have subsequently modified their holdings. The Sixth Circuit started off as the right to be free from excessive force in handcuffing cases, and now they've got what's essentially a three-part test of you have to complain about the handcuffing, officers have to ignore your complaints, and you have to have some subjective manifestation of injury regarding those complaints. And what I've gathered from these cases is that essentially what happens in those cases is that the complaint of a prior condition or injury is what is injured during the handcuffing. So in those cases, for instance, someone has a torn rotator cuff. I can't put my arms behind my back. You put my arms behind my back, it re-tears my rotator cuff. Here, there is no such allegations that his condition, which is not having his left hand, was exacerbated or aggravated by the method of handcuffing. All the complaint says is that he was injured physically and mentally. So we don't think even under their standard that they're meeting what the Sixth, Eighth, and Tenth Circuits would say. But even then, I don't think that three circuits that have kind of been wishy-washy on what their case law is is a consensus that the court can look to. We point to a number of other cases from other circuits that dispute that. We've got the Eleventh Circuit, the Seventh Circuit, and the Fifth Circuit that all have differing standards with respect to handcuffing cases. So we don't believe that three circuits can establish a consensus. And I think that the case from two years ago, I'm going to butcher this name, the Pijikowski v. Wheeler, the court looked at this issue on the robust consensus issue and held that case law from three sister circuits is not a robust consensus. And that's kind of been repeated. Now, contrast that to Booker, the Booker case, 855 F. 3rd, 533, the court did find a robust consensus when 10 of 13 circuits had agreed on certain rights. But here we have three. We have three others that kind of dispute what the Sixth Circuit has done. I know the First Circuit has also not held in line with the Sixth, and that was the Hunt v. Massey case that we cited in our brief. So we think under any analysis on the clearly established that it's not there. And that's why we filed our motion, and we believe that's why the district court granted our motion. So we would ask this court to affirm because this is precisely the situation that qualified amenity should apply. Unless the court has any questions for me. Thank you, Mr. Atkin. Mr. Atkinson. Thank you. The issue I want to address most clearly is this one of a consensus of persuasive authority. We haven't found any cases in the Fourth Circuit or the United States Supreme Court where an amputee was cuffed from wrist to ankle. I suggest the reason is because it's pretty outlandish behavior in the first place. However, the question of whether there is a split in the circuits over this issue is an overgeneralization. What we would argue is the Sixth, Eighth, and Tenth Circuit site cases that argue that if an officer is told about an injury and he can handcuff someone in front of them instead of behind their back and chooses not to do so, that can be an excessive force claim, that a clearly established right of excessive force. What's the option in your case, in this case? What they could have done for him? They could have put a belt on him and attached a cuff to that. They could have hooked it to his pants. It was a nonviolent traffic offense. They could have put him in the back of the car without cuffing at all, in a cage. In what case? You cited one where someone suggested, I need you to do it from the front because in the back I have a problem. But there's no evidence here that there was a suggestion that physically it would have been better. Is there evidence that he said, listen, you can't do that. My back would be strained in a transport if I'm – because that is awkward. You bend down, you have to stay bent down for a period of time. Is there anything you have? Did you plead that, that he was injured? We did plead that he suffered injuries as a result of the excessive force. Oh, no, I mean in the sense that he objected to it and said don't do it this way and do it this way. We didn't plead specific facts in the complaint that he told the officer, please don't do this because it would hurt my back or hurt my body. Or not suggest any alternatives. He didn't volunteer them to the officer, no. And you have any evidence that they've ever used those alternative methods before? Well, when we discovered the case, we learned that they were trained and in their policy it talks about if you're transporting a disabled person, you need to use your common sense, and it offers those options that we've discussed as available to those specific officers in their own policy, which is part of the reason we argued this case was prematurely ruled on as a motion to dismiss. All the problems of policy don't equate to clearly established law. Correct, not on their own. However, they can be evidence of fair notice to the officers of what's available to them and what's reasonable under the circumstances. What I would point out is a distinction between the 6th, 8th, and 10th Circuit cases. Those were cases where people didn't have outwardly obvious injuries and they told the officers, hey, my shoulder is hurt, I had surgery, and the officers, if they didn't take that into account, would have been able to be held for excessive force. The other circuits have ruled on the other way on that specific issue, that, well, if I didn't see obvious evidence of an injury, how am I supposed to know that that actually would cause some harm to the person? Maybe they're just saying that because they don't want to be handcuffed. Well, qualified immunity is about notice to the officers, and so if there's no common standard used by the circuits, all of the circuits are consistent about, or at least the majority, how can we say that these officers would have had notice in this situation? The way I think it's clear and there is a consensus, there are no cases that I've found where a person being detained who had an obvious injury, a sling on their arm or missing an arm, like my client, where any officers refused to accommodate them, and the court upheld that saying that's not excessive force. So these other circuits, the 1st, 5th, 7th, and 11th, cited by the defendants in their brief, argue, well, we didn't have obvious evidence of that, we were just told by these suspects that they had this injury. They didn't damage or injure his bad arm. What they did is they took his good arm and they needed to cuff it somewhere, and they made a decision, I guess, common sense, which was good or bad, and you said, of course, it's bad, and you get the benefit of that, but it was not a situation where they were hurting his bad arm and not accommodating him. What they were trying to do is to figure out how to cuff him with one good arm, which is a little different. Yeah, but by doing so hurt that arm and that back and that part of his body. But as was clearly pointed out, the district court ruled that was, it said the conduct was so extreme that any reasonable officer would know that was inappropriate and excessive force. Don't you have to have a case? What's that? Don't you have to have a case where every officer, every single reasonable officer would know that that violated constitutional rights? Well, in the two-step process for a qualified immunity, the court ruled that it was unreasonable that no officer would think that was appropriate. We're here on review of the court. Right. On that part. But on the second part, the court ruled that there wasn't a clear standard or a clearly established right, and to your point, Judge, we think if there's ever a situation where someone has an obvious injury and the officers, there's no case that says if you have an obvious injury and they fail to accommodate that, that that cannot stand as an excessive force claim. We would argue that should be the standard that should be applied. That falls in each of these cases. In my client's case, it can be distinguished from the ones in the First Circuit, Fifth, Seventh. For that reason, he had an obvious injury. There's no dispute. He's wearing a T-shirt. They actually accommodated that. They tried to cuff him in a way that wouldn't use that arm. Well, they couldn't put a handcuff on the top of his arm because it wouldn't stay. They were designing something. We're speculating. Now you could tie that arm around the back with a flex to the other arm. But they left that arm alone. That was the injured arm. But it was not a need to accommodate that. It was a need to figure out how to cuff him. Well, and we would dispute that they were accommodating him by doing that. I mean, there's evidence in the complaint that they mocked him for the way he was walking as well. They didn't increase the injury or damage the injury or not accommodate it. They were confronted with a circumstance that they were trying to solve. Right. An argument is. . . Yeah, I understand. Do you have a more favorable impression or response to Judge Nehemiah's first suggestion about a remand? Yeah, I think it's an excellent point that there's a point once the handcuffs. . . We do not oppose that. Once you're cuffed, at what point does that become a due process argument? And we should be evaluating that under that. We'd be happy to do so. Well, the only thing I pointed out to you is this Robles case that we decided, and that was a cuffing issue, and whether it's appropriate cuffing. And we analyzed that under the due process clause. Thank you. And the only thing I'd add is the only other distinction with our case is that all of these cases where the court felt there was an excessive, a clearly established right of excessive force, dealt with situations like ours where the client was not combative, was not fighting back, was not at risk of flight. And due to that and his obvious injury, we think there was a clearly established right. And we ask the court to reverse and remand. Thank you. Thank you so much, Mr. Atkinson and Mr. Adkins, for your arguments. We'd love to come down and greet you, but we cannot. But know very much that we appreciate your being here and your arguments to help us on this case. Thank you so much. And with that, I'll ask the clerk to adjourn us for the day. This honorable court stands adjourned until tomorrow. God save the United States and this honorable court.
judges: Roger L. Gregory, Paul V. Niemeyer, Patricia T. Giles